**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
         apersinger@bursor.com
         ykrivoshey@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORTUNATO LOPEZ JUAREZ, on Behalf of Himself and all Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>CITIBANK, N.A.,<br><br>Defendant. | Case No.  16-cv-01984-WHO<br><br>Honorable William H. Orrick<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND TO STRIKE**<br><br>DATE: August, 17, 2016<br>TIME:  2:00 p.m.<br><br>Courtroom 2, 17th Floor<br>Complaint Filed:  April 14, 2016 |

**TABLE OF CONTENTS**

**PAGE(S)**

I.   INTRODUCTION ................................................................................................................1

II.   LEGAL STANDARD .........................................................................................................2

III.  ARGUMENT .......................................................................................................................3

    A.   PLAINTIFF HAS ALLEGED INJURY UNDER *SPOKEO* ..................................3

    B.   PLAINTIFF HAS STANDING UNDER THE ROSENTHAL ACT AND HIS CLAIMS ARE ADEQUATELY PLED .........................................................................5

        1.   Plaintiff Need Not Be a "Debtor" to Have Standing under the Rosenthal Act ..........................................................................................................5

        2.   Plaintiff's Rosenthal Act Claim Is Adequately Pled ....................................6

    C.   DEFENDANT'S MOTION TO STRIKE SHOULD BE DENIED .........................8

        1.   Citibank's Motion to Strike Is Premature ....................................................8

        2.   Citibank's Class Definition Arguments Are Premature ..............................8

IV.  CONCLUSION ....................................................................................................................9

Plaintiff Fortunato Lopez Juarez ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendant Citibank, N.A.'s ("Citibank" or "Defendant") Motion to Dismiss Plaintiff's Class Action Complaint, and Motion to Strike the class allegations.

## I. INTRODUCTION

In March 2016, Citibank made at least 42 telephone calls to Mr. Juarez on his cellular telephone to collect a debt owed by someone else. Compl. ¶ 16. Defendant called Mr. Juarez with such frequency to constitute harassment, calling a minimum of three times, every single day, for 12 days straight. Compl. ¶ 18. These calls were made using an autodialer and/or an artificial or prerecorded voice without Plaintiff's prior express written consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act").

Defendant does not deny that it made these calls in violation of the TCPA and Rosenthal Act. It attempts to escape liability, however, by arguing that Plaintiff lacks Article III standing. But numerous courts, including the Ninth Circuit, have found that an alleged violation of the TCPA confers the requisite injury for Article III standing. And as several courts have recently found, the Supreme Court's opinion in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) reinforces the view that plaintiffs suffer a concrete injury from violations of the TCPA. *See Booth v. Appstack, Inc.*, 2016 WL 3030256 at *5-6 (W.D. Wash. May 25, 2016) (holding, after the Supreme Court had already ruled in *Spokeo*, that "Plaintiffs' allegations demonstrate 'concrete injury' as elucidated in *Spokeo*," where the plaintiffs had "to waste time answering or otherwise address[ ] widespread robocalls" and where the use of an automatic telephone dialing system "amplifies the severity of this injury."); *Rogers v. Capital One Bank (USA), N.A.,* 2016 WL 3162592, at *2 (N.D. Ga. June 7, 2016) (holding, after the Supreme Court had already ruled in *Spokeo*, that "because plaintiffs allege that the calls were made to their personal cell phone numbers, they have suffered particularized injuries because their cell phone lines were unavailable for legitimate use during the unwanted calls.").

Defendant also contends that Plaintiff's Rosenthal Act claims fail because Plaintiff did not actually owe the debt Defendant sought to collect through its repeated telephone calls. This is

contrary to the plain language of the statue, which defines "debtor" as any "natural person from whom a debt collector seeks to collect a consumer debt which is due and owing or alleged to be due." Cal. Civ. Code § 1788.  Courts consistently hold that a plaintiff alleging violations of the FDCPA and Rosenthal Act need not actually owe any consumer debt.  *See Shannon v. Windsor Equity Group, Inc.*, 2014 WL 977899, at *10-11 (S.D. Cal. Mar. 12, 2014) (reviewing the language of 15 U.S.C. 1692d and Cal. Civ. Code § 1788 and holding that non-debtors have standing to assert claims under the FDCPA and Rosenthal Act); *see also Rawlinson v. Law Office of William M. Rudow, LLC*, 460 Fed. Appx. 254, 257 (4th Cir. 2012) (holding that "absent a limitation in the substantive provisions of the FDCPA, any aggrieved party, not just a debtor, may bring an action under the statute.").

Defendant's motion to strike the class allegations is also meritless. Courts in this district, in this circuit, and elsewhere routinely conclude that motions to strike class allegations and arguments related to class issues are premature at the pleadings stage.  Thus, Defendant's motion to strike should be summarily denied.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The statement must provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While Rule 8 does not require "detailed factual allegations," it does demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under Rule 12, a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  When ruling on the motion, "a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face." *Id.*  A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988); *accord Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) ("A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'").  Since neither condition for a Rule 12(b)(6) dismissal is met in the instant case, Citibank's motion should be denied.

### III. ARGUMENT

#### A. Plaintiff Has Alleged Injury Under *Spokeo*

Defendant argues that Plaintiff lacks Article III standing because he "does not allege any facts demonstrating any concrete injury with respect to the calls he allegedly received from Citibank in error."  Memorandum of Points and Authorities In Support of Defendant's Motion to Dismiss, Doc. No. 13 ("Def.'s Br.") at 6.  To support that argument, Defendant cites *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1543 (2016) where the Supreme Court concluded that "Article III standing requires a concrete injury even in the context of a statutory violation."  But Defendant's unadorned citation to the Supreme Court's unremarkable conclusion that plaintiffs in federal court must have Article III standing does not show that Plaintiff lacks standing to bring this case.  Notably, Defendant fails to cite a single case in which a court has found that a plaintiff lacked Article III standing to sue under the TCPA.

While the Court in *Spokeo* instructed that a "plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a right and purports to authorize a suit to vindicate it," the Court also made clear that "the violation of a procedural right granted by statue can be sufficient in some circumstances to constitute injury in fact" and that "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Spokeo, Inc. v. Robins,* 136 S. Ct. at 1549-1550,  emphasis in original, citing *Federal Election Comm'm v. Akins,* 524 U.S. 11, 20-25 (1998) (confirming that a group of voters' inability to obtain information that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND TO STRIKE  3
CASE NO: 16-CV-01984-WHO

*Citizens v. Dept. of Justice,* 491 U.S. 440, 449 (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act constituted a sufficiently distinct injury to provide standing to sue).

A "concrete" injury need not be a "tangible" injury. *Spokeo Inc. v. Robins,* 136 S. Ct. at 1543, citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009). To determine whether an intangible harm constitutes injury in fact, both history and the judgment of Congress are instructive. Numerous courts – including the Ninth Circuit – have historically held that a plaintiff satisfies Article III standing by alleging a violation of his statutory rights under the TCPA. *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 880 w (9th Cir. 2014) ("Congress has expressly created a federal cause of action affording individuals like Gomez standing to seek compensation for violations of the TCPA."); *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 323-27 (3d Cir. 2015) (holding that a plaintiff has Article III standing to sue under the TCPA without proof of actual damages, even when he was not the intended recipient of the call); *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1250-52 (11th Cir. 2015) (holding that the TCPA is a statute which "confers new legal rights on a person," thus providing that person with "Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights"); *Imhoff Investment, LLC v. Alfoccino, Inc.*, 792 F.3d 627, 631-634 (6th Cir. 2015) (holding that the TCPA gave the recipient of an unsolicited fax Article III standing). These holdings are consistent with Supreme Court precedent that "the actual or threatened injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982).

Since the Supreme Court's recent decision in *Spokeo*, several courts have addressed the issue of Article III standing specifically in the context of TCPA claims, and in each instance courts have found that the plaintiffs adequately alleged injury. *See, e.g., Booth*, 2016 WL 3030256, at *5 (holding, after the Supreme Court had already ruled in *Spokeo*, that "Plaintiffs' allegations demonstrate 'concrete injury' as elucidated in *Spokeo*," where the plaintiffs had "to waste time

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND TO STRIKE     4
CASE NO: 16-CV-01984-WHO

answering or otherwise address[ ] widespread robocalls" and where the use of an automatic telephone dialing system "amplifies the severity of this injury"); *Rogers,* 2016 WL 3162592, at *2 (holding, after the Supreme Court had already ruled in *Spokeo*, that "because plaintiffs allege that the calls were made to their personal cell phone numbers, they have suffered particularized injuries because their cell phone lines were unavailable for legitimate use during the unwanted calls.").

Likewise, here, Plaintiff alleges that he and the putative class members were "harmed by the acts of Defendant in the form of multiple involuntarily telephone and electrical charges, the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, and violations of their statutory rights." Compl. ¶ 31.  As in *Booth* and *Rogers*, even after *Spokeo*, nothing more is required for Article III standing.

**B.**     **Plaintiff Has Standing under the Rosenthal Act and His Claims Are Adequately Pled**

    **1.**     **Plaintiff Need Not Be a "Debtor" to Have Standing under the Rosenthal Act**

Defendant's argument that Plaintiff's Rosenthal Act claim should be dismissed because Plaintiff is not a "debtor" is clearly contrary to the plain language of the statue.  The specific provisions that Plaintiff alleges Defendant violated, Cal Civ. Code § 1788.11(d) and (e), and Cal. Civ. Code § 1788.17 (which requires Defendant to comply with all provision of the FDCPA, 15 U.S.C. §§ 1692 *et seq.*) prohibit certain practices that affect any "natural person," not just "debtors." The term "debtor" means a natural person from whom a debt collector seeks to collect a consumer debt which is due and owing *or alleged to be due* and owing from such person.  Cal. Civ. Code § 1788.2.  Plaintiff alleges that Defendant's calls were made in an attempt to collect a debt alleged to be due.

Courts consistently hold that a plaintiff alleging violations of the FDCPA and Rosenthal Act need not actually owe any consumer debt.  *See gen. Shannon v. Windsor Equity Group, Inc*., 2014 WL 977899, at *10-11 (S.D. Cal. Mar. 12, 2014) (reviewing the language of 15 U.S.C. 1692d and Cal. Civ. Code § 1788 and holding that non-debtors have standing to assert claims under the FDCPA and Rosenthal Act); *see also Rawlinson v. Law Office of William M. Rudow, LLC*, 460 Fed. Appx. 254, 257 (4th Cir. 2012) (holding that "absent a limitation in the substantive provisions of the

FDCPA, any aggrieved party, not just a debtor, may bring an action under the statute"); *Morris v. Portfolio Recovery Assocs., LLC*, 2015 WL 4523855, at *2 (D. Kan. July 27, 2015) ("Case law and the FDCPA's legislative history support this interpretation.  One of the purposes of the FDCPA is that every person, including non-debtors, has a right to be treated in a reasonable manner.  With regard to a debt collector telephoning a non-debtor to collect a debt, courts have repeatedly allowed the non-debtor to file suit under § 1692d.") (citation omitted).

The fact that Defendant was contacting the wrong individual, one that did not in fact owe the alleged debt, does not negate Plaintiff's ability to redress the harm caused.  Defendant does not, nor can it, deny that the calls at issue here were for the purpose of collecting an alleged debt.  Defendant's argument that Plaintiff's claims should be dismissed because he is not a "debtor" should be denied for these reasons.

### 2.     Plaintiff's Rosenthal Act Claim Is Adequately Pled

Defendant argues that Plaintiff's Complaint "lacks sufficient factual matter to state a claim for relief under the Rosenthal Act, and that Plaintiff's allegations "amount to nothing more than general allegations of causing a telephone to ring," with "no allegations regarding the content of any calls, including that any calls were accompanied by abusive or threatening messages." Def.'s Br. at 7.  In support of its argument, Defendant cites several cases in which courts found that plaintiffs' allegations that defendants "repeatedly called" or that there were a "high volume of phone calls" do not by themselves constitute a violation of the Rosenthal Act.  *Id.* at 7-8.

Here, Plaintiff Juarez goes far beyond simple allegations that Defendant "repeatedly called" or that Defendant made a "high volume of phone calls."  In his complaint, Plaintiff Juarez provides detailed descriptions of each and every call made by Defendant, including the number that called, the date, and the time of the call.  Compl. ¶ 2.  Plaintiff also specifically alleges that the content of the calls related to Defendant's attempts to collect a consumer debt, and that the sheer frequency of unwanted calls constituted harassment.  *See id.* ¶ 4 ("Plaintiff alleges that Defendant engaged in a campaign of harassment in an attempt to coerce payment of a consumer debt."); *Id.* ¶ 17 ("Defendant's calls to Plaintiff were made with such frequency as to constitute harassment.

1  Defendant called Mr. Juarez a minimum of three times, every single day, for 12 days straight. On
2  several days, Defendant called Mr. Juarez more than three times"); *Id.* ¶ 16 (Plaintiff "repeatedly
3  requested that Defendant stop calling.").

4  Defendant's suggestion that Plaintiff must allege that the calls were accompanied by abusive
5  or threatening messages in order to state a claim under the Rosenthal Act is blatantly incorrect. *See*
6  Def.'s Br. at 7. Among other things, the Rosenthal Act prohibits debt collectors from
7  "[c]ommunicating, by telephone or in person, with the debtor with such frequency as to be
8  unreasonable and to constitute a harassment to the debtor under the circumstances." Violations of
9  Cal. Civ. Code § 1788 include "[c]ausing a telephone to ring repeatedly or continuously to annoy
10 the person called," calling before 8:00 a.m. or after 9:00 p.m., failing to cease communication upon
11 request, threatening arrest or legal action, using abusive or profane language, misrepresenting the
12 debt, and using deceit to collect debt. While the use of abusive or profane language is one potential
13 violation of the statute, *see* § 1788.11 (a), it is certainly not a prerequisite to a Rosenthal Act claim.

14 Here, Plaintiff does not allege a violation of § 1788.11 (a). Instead, Plaintiff alleges that
15 Defendant violated § 1788.11 (d) and (e) because Defendant called Plaintiff repeatedly,
16 continuously, and with such frequency as to be unreasonable. Compl. ¶ 16-17. Plaintiff further
17 alleges that Defendant failed to cease communication despite his repeated requests. *Id.* "The
18 making of frequent calls itself can constitute actionable harassment under the Rosenthal Act."
19 *Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal. App. 4th 29, 38 (2015); *Sanchez v. Client*
20 *Servs., Inc.*, 520 F. Supp. 2d 1149, 1161 (N.D. Cal. 2007) (granting partial summary judgment in
21 favor of plaintiffs where, "[i]rrespective of the substance of the telephone messages…the frequency
22 and volume of the telephone calls show that defendants intended to annoy, abuse and harass
23 plaintiff"). Notably, the reasonableness of the volume of calls and their pattern is a question of fact
24 for the jury. *Green v. Creditor Iustus Remedium, LLP*, 2013 WL 6000967, at *3 (E.D. Cal. Nov. 12,
25 2013). As such, Citibank's contention that Plaintiff has not stated a claim for violation of the
26 Rosenthal Act is meritless.

27
28

### C. Defendant's Motion to Strike Should Be Denied

#### 1. Citibank's Motion to Strike Is Premature

Motions to strike class allegations at the pleadings stage are almost always denied as premature. *See, e.g.*, *In re Sony PS3 Other OS Litig.*, 2011 WL 672637, at *1 (N.D. Cal. Feb. 17, 2011) ("Sony's further request for a ruling as to viability of this matter proceeding as a class action is premature, and therefore its motion to strike the class allegations will be denied."); *Yastrab v. Apple Inc.*, 2015 WL 1307163, at *8 (N.D. Cal. Mar. 23, 2015) ("[I]n general, class allegations are not tested at the pleading stage and are instead scrutinized after a party has filed a motion for class certification . . . because a class certification decision usually involves considerations enmeshed in the factual and legal issues presented by the representative's claims."); *Miranda v. Coach, Inc.*, 2015 WL 636373, at *3 (N.D. Cal. Feb. 13, 2015) (denying motion to strike class allegations because "as many cases have concluded, it is far too premature to resolve the question at this early stage"); *Cruz v. Sky Chefs, Inc.*, 2013 WL 1892337, at *5 (N.D. Cal. May 6, 2013) ("many courts have recognized that the sufficiency of class allegations are better addressed through a class certification motion, after the parties have had an opportunity to conduct some discovery"); *In re Wal–Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d 609, 614–16 (N.D. Cal. 2007) ("the granting of motions to dismiss class allegations before discovery has commenced is rare"). Defendant has presented no justification for departing from this standard practice.

#### 2. Citibank's Class Definition Arguments Are Premature

In particular, arguments regarding proposed class definitions are premature at the pleadings stage. *In re Optical Disk Drive Antitrust Litig.*, 2012 WL 1366718, at *4 (N.D. Cal. Apr. 19, 2012) ("Whether the named plaintiffs can serve as adequate class representatives upon refinement of the class definitions remains to be seen, but it would be premature to parse and dismiss some portion of the claims for lack of standing at this stage."); *Velasquez v. HSBC Fin. Corp.*, 2009 WL 112919, at *4 (N.D. Cal. Jan. 16, 2009) ("Generally, courts review class allegations and definitions through a motion for class certification."). Thus, Citibank's contention that the class definitions are impermissibly fail-safe is premature and should be rejected. *See Morris v. SolarCity Corp.*, 2016 WL 1359378, at *1 (N.D. Cal. Apr. 6, 2016) (rejecting challenges to supposed "fail-safe" class

definitions in a motion to dismiss and strike because challenges to class certification are not appropriately addressed at the pleading stage).[1]

## IV.    CONCLUSION

For the forgoing reasons, Defendant's motion to dismiss and motion to strike should be denied. If the Court determines the motion to dismiss should be granted in any respect, Plaintiff respectfully requests leave to amend. *See, e.g.*, *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983) ("Ordinarily, leave to amend should be freely given in the absence of prejudice to the opposing party. … In the absence of such a reason, denial of leave to amend is an abuse of discretion and reversible.").

Dated:  July 8, 2016                        Respectfully Submitted,

**BURSAR & FISHER, P.A.**

By:    */s/ Annick M. Persinger*
            Annick M. Persinger

Scott A. Bursor (State Bar No. 276006)
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey O. Krivoshey (State Bar No.295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Email: scott@bursor.com
            ltfisher@bursor.com
            apersinger@bursor.com
            ykrivoshey@bursor.com

*Attorneys for Plaintiff*

---

[1] Notably, the Ninth Circuit has declined to preclude the use of fail-safe classes. *Vizcaino v. United States Dist. Court for Western Dist. of Wash.*, 173 F.3d 713, 722 (9th Cir. 1999) (rejecting the district court's reasoning that it was circular to define a class using a legal conclusion that was essential to an ultimate finding of liability).  In any event, a district court has "broad discretion" to "avoid the 'fail-safe' problem" and it has the power to "redefine the class or to afford plaintiffs an opportunity to do so." *Heffelfinger v. Elec. Data Sys. Corp.*, 2008 WL 8128621, at *10 (C.D. Cal. Jan. 7, 2008).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND TO STRIKE                    9
CASE NO: 16-CV-01984-WHO