UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORTUNATO LOPEZ JUAREZ,<br><br>    Plaintiff,<br><br>    v.<br><br>CITIBANK, N.A.,<br><br>    Defendant. | Case No. 16-cv-01984-WHO<br><br>**ORDER DENYING MOTION TO DISMISS AND TO STRIKE**<br><br>Dkt. No. 13 |

## INTRODUCTION

During twelve days in March, 2016, plaintiff Fortunato Juarez alleges that defendant Citibank N.A. telephoned him at least 42 times on his cellular phone, at least three times a day, using an autodialer and/or an artificial or prerecorded voice in an attempt to collect a consumer debt. Complaint ("Compl.") ¶ 1. (Dkt. No. 1). He repeatedly requested that Citibank stop calling, informing it that he was not the individual it was attempting to contact, but to no avail. *Id.* ¶ 16. I DENY Citibank's motion to dismiss Juarez's class action complaint alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and California's Rosenthal Fair Debt Collection Practices Act, Civil Code 1788 *et seq.* ("Rosenthal Act"), because he has adequately pleaded a "concrete injury" to establish Article III standing on his TCPA claim, is a "debtor" under the Rosenthal Act because Citibank treated him as one, and plausibly alleged that Citibank's calls were harassing.[1]

## BACKGROUND

Juarez alleges that in March, 2016 Citibank called him at least 42 times on his cellular phone using an autodialer and/or an artificial or prerecorded voice in an attempt to collect a

---

[1] I also DENY Citibank's motion to strike Juarez's class definitions as being premature.

consumer debt. Compl. ¶ 1. He did not give Citibank prior written consent to make these calls and repeatedly requested that Citibank stop calling, informing Citibank that he was not the individual it was attempting to contact. *Id.* ¶ 16. He presents a chart showing that in March, 2016 he received 42 calls over the course of 12 days and received at least three calls a day from the same number. *Id.* ¶ 2. Prior to receiving these calls, he never had any contact with Citibank and did not provide them with his phone number. *Id.* ¶ 19.

Based on these facts, Juarez brings claims under the TCPA and Rosenthal Act on behalf of a putative class. Citibank moved to dismiss and to strike the complaint arguing that Juarez failed to allege standing, failed to state a claim, and used improper fail safe class definitions. I heard oral argument on August 17, 2016.

**LEGAL STANDARD**

**I. MOTION TO DISMISS RULE 12(B)(1)**

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). Article III restricts federal court jurisdiction to hearing "cases and controvers[ies]" and "[s]tanding to sue or defend is an aspect of the case or controversy requirement." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997); U.S. Const. Art. III, § 2, cl. 1.

The party invoking the jurisdiction of the federal court bears the burden of alleging facts to satisfy the requirements of constitutional standing: a (1) legal injury, (2) caused by the defendant, and (3) capable of legal redress. *Schmier v. U.S. Ct. of App. for the Ninth Cir.*, 279 F.3d 817, 821 (9th Cir. 2002).

**II. MOTION TO DISMISS RULE 12(B)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible

when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### III. MOTION TO STRIKE RULE 12(F)

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a motion to strike under Rule 12(f) is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing of those issues before trial. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (citation omitted). Motions to strike "are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

**DISCUSSION**

### I. TCPA STANDING

Citibank argues that Juarez's TCPA claims must be dismissed on the ground that he lacks Article III standing under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) because he has not

1 alleged facts demonstrating any concrete injury relating to the phone calls.  To establish standing
2 under *Spokeo*, a plaintiff bringing a claim based on a statutory violation must still allege a concrete
3 and particularized injury as a "plaintiff does not automatically satisfy the injury-in-fact
4 requirement whenever a statute grants a right and purports to authorize a suit to vindicate it." *Id.*
5 at 1549.  Citibank argues that Juarez has failed to show any "concrete harm" or injury as a result
6 of its phone calls and has simply alleged a bare procedural violation.  Mot. 1.  Juarez rebuts that he
7 has alleged that he and the putative class members were "harmed by the acts of Defendant in the
8 form of multiple involuntary telephone and electrical charges, the aggravation, nuisance, and
9 invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone
10 calls, and violations of their statutory right."  Opposition ("Oppo.") 5.

11 Several courts have addressed whether a plaintiff's allegations that she received annoying
12 and unwanted phone calls in violation of the TCPA is sufficient to establish Article III standing
13 since *Spokeo* was decided.  *See, e.g.*, *Booth v. Appstack, Inc.*, No. c-13-1533, 2016 WL 3030256,
14 *3 (W.D. Wash. May 24, 2016); *Rogers v. Capital One Bank (USA), N.A.*, No. 15-cv-4016, 2016
15 WL 3162592, *2 (N.D. Ga. Jun. 03, 2016); *Romero v. Dep't Stores Nat'l Bank*, No. 15-cv-193,
16 2016 WL 4184099, (S.D. Cal. Aug. 5, 2016).  These courts have not reached a consensus on
17 whether such calls constitute a "concrete injury" necessary to establish Article III standing.

18 For example, in *Booth*, the court found standing where defendant Appstack used an
19 autodialing system to call thousands of phone numbers to promote its products.  2016 WL
20 3030256 at *3.  The court concluded plaintiffs had adequately alleged a concrete injury as "the
21 TCPA and WADAD[2] violations alleged here, if proven, required Plaintiffs to waste time
22 answering or otherwise addressing widespread robocalls."  *Id.* at *6.  Similarly, in *Rogers*, the
23 court found there was standing where plaintiffs received unwanted phone calls from Capital One,
24 ranging from two to forty calls per plaintiff, which continued even though each plaintiff instructed
25 Capital One to stop calling.  2016 WL 3162592 at *1.  The court concluded that because plaintiffs'
26 phones were "unavailable for legitimate use during the unwanted calls" they had "alleged

---

[2] "WADAD" refers to the Washington Dialing and Announcing Device Act which prohibits the use of robocalls and automatic dialing for commercial solicitation. WASH. REV. CODE § 80.36.400

4

1  sufficient facts to support standing." *Id.* at *2.

2  In contrast, in *Romero*, the court found that a plaintiff, who had received 272 phone calls
3  from a debt collector, could not establish standing under the TCPA because she could not show
4  that any individual phone call had caused sufficient lost time, aggravation, and distress to
5  constitute a concrete injury. *Romero*, 2016 WL 4184099 at *4.

6  I am persuaded by *Booth* and *Rogers*. Although I agree with Citibank that Juarez cannot
7  establish standing based on a bare violation of the TCPA, Juarez has pleaded sufficient facts to
8  show that the unwanted calls he received were an annoyance that caused him to waste time. This
9  does not mean any violation of the TCPA will necessarily give rise to Article III standing–for
10 example calls made to a neglected phone that go unnoticed or calls that are dropped before they
11 connect may violate the TCPA but not cause any concrete injury. But here, Juarez has alleged that
12 he received at least 42 unwanted and unsolicited phone calls from Citibank, getting multiple calls
13 a day. Compl. ¶ 1. He has further alleged that he "repeatedly requested that Defendant stop
14 calling, informing Defendant that he was not the individual they were attempting to contact" but
15 that Citibank continued calling. *Id.* ¶ 16. Based on these allegations, it appears that Juarez wasted
16 his own time and energy dealing with the unwanted phone calls. Even a single phone call can
17 cause lost time, annoyance, and frustration. This is especially plausible where the recipient
18 receives repeated, regular phone calls from the same number and asks the caller to stop, but due to
19 the call pattern, nevertheless worries about and anticipates additional calls. Juarez's allegation
20 that he received repeated unwanted calls that caused him aggravation, nuisance, and an invasion of
21 privacy, is sufficient to allege a "concrete" and "particularized" injury that establishes standing
22 under *Spokeo*.

23 **II. ROSENTHAL ACT STANDING**

24 Citibank argues that Juarez lacks standing to sue under the Rosenthal Act because recovery
25 is limited to a "debtor" and Juarez does not meet the Act's definition of the term. Mot. 7. The
26 Rosenthal Act defines "debtor" as "a natural person from whom a debt collector seeks to collect a
27 consumer debt that is due or owing or alleged to be due and owing from such person." Cal. Civ.
28 Code § 1788.2. In his complaint, Juarez alleges that Citibank "called Mr. Juarez at least 42 times

on his cellular telephone . . . in an attempt to collect a consumer debt" and that it "engaged in a campaign of harassment in an attempt to coerce payment of a consumer debt." Compl. ¶¶ 1, 4. He also alleges that he "repeatedly requested that Defendant stop calling, informing Defendant that he was not the individual they were attempting to contact." *Id.* ¶ 16. Based on these allegations it appears that Citibank contacted Juarez "seek[ing] to collect a consumer debt . . . alleged to be due and owing from [Juarez]." Cal. Civ. Code § 1788.2.

Citibank points to *Sanchez v. Client Services, Inc.* and *People v. Persolve, LLC*, as cases demonstrating that only the person "who actually or allegedly owes the debt at issue" can bring a claim under the Rosenthal Act. *Sanchez v. ClientServs., Inc.*, 520 F. Supp. 2d 1149, 1155 n.3 (N.D. Cal. 2007); *Persolve, LLC.*, 218 Cal. App. 4th 1267, 1272 n.1 (2013). Neither of these cases resolves the dispute here, where Juarez claims that Citibank contacted him and alleged he owed a debt; in *Sanchez* it was clear that only the plaintiff's mother was alleged to owe a debt, and in *Persolve LLC* the State of California brought claims on behalf of California debtors and did not face individual standing issues.

In *Masuda v. Citibank, N.A.*, the Hon. Phyllis Hamilton assessed whether a plaintiff had standing under the Rosenthal Act in nearly identical circumstances. 38 F. Supp. 3d 1130, 1133 (N.D. Cal. 2014). There, a plaintiff alleged that "he received over 300 calls from Citibank seeking to collect on a Citibank Mastercard consumer credit card" that did not belong to him. *Id.* at 1132. The court found that the plaintiff "ha[d] standing to bring an action under the Rosenthal Act because he fits perfectly well into the second classification of debtor—those who are *alleged* to have a consumer debt due and owing." *Id.* at 1133. Judge Hamilton's analysis from *Masuda* is persuasive. I conclude, on the facts alleged, that Juarez is a "debtor" under the Rosenthal Act's definition and has standing to bring his Rosenthal Act claim.

### III. ROSENTHAL ACT SUFFICIENCY OF CLAIM

Juarez bring his Rosenthal Act claim under sections 1788.11 (d) and (e) which prohibit a debt collector from causing a telephone to "ring repeatedly or continuously to annoy" and from communicating with a debtor with "such frequency as to be unreasonable and to constitute an harassment to the debtor under the circumstances." Cal. Code §§ 1788.11 (d) and (e).

6

1      Citibank argues that Juarez fails to state a claim under the act because he alleges only that
2 he received a large number of calls and makes no allegations "regarding the content of any call" or
3 that any calls "were accompanied by abusive or threatening messages." Mot. 7. Citibank points
4 to a number of cases in support of its claim that "the number of calls alone is not sufficient and
5 cannot itself constitute harassment." *See, e.g.*, *Snyder v. Nationstar Mortg. LLC*, No. 15-cv-
6 03049-JSC, 2015 WL 7075622, at *7 (N.D. Cal. Nov. 13, 2015) ("A plaintiff must allege more
7 than a defendant's 'communications' or a 'high volume of phone calls' to state a claim under the
8 RFDCPA.") (internal citation omitted).

      But Juarez has done far more than allege he received a certain number of phone calls. In
addition to alleging that he received 42 calls, Juarez has included a chart detailing the precise date
and time he received these calls over the course of 12 days. Compl. ¶ 2. This chart demonstrates
a pattern of calls in that Juarez received multiple calls a day, every day, for a 12 day period. *Id.*

      Juarez also alleges that he "repeatedly requested that Defendant stop calling, informing
Defendant that he was not the individual they were attempting to contact. Defendant's calls
continued despite Plaintiff's requests." *Id.* at 16. While there is no bright-line rule as to what
conduct is sufficient to establish harassment under the Rosenthal Act, courts have found that
calling an individual after learning or being informed that they do not owe the debt at issue
"plausibly constitutes behavior whose natural consequence was to harass, oppress, or abuse."
*Crockett v. Rash Curtis & Assoc.*, 929 F. Supp. 2d 1030, 1032 (N.D. Cal. 2013) (finding
harassment plausible where debt collector "very likely received notice from the contents of
plaintiff's outgoing answering-machine message . . . that it was calling the wrong number."); *see
also Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1178 (9th Cir. 2006) (where
the debt collector knew the debt "was invalid, the natural consequence of repeatedly calling
[plaintiff] to demand payment of that debt was to 'harass, oppress, or abuse.' ").

      Because Juarez alleges that Citibank called him multiple times a day, every day for close to
two weeks and did not stop calling despite Juarez informing Citibank that he was not the
individual they were attempting to contact, he has plausibly alleged that Citibank engaged in
harassing behavior under sections 1788.11 (d) and (e). Citibank's motion to dismiss Juarez's

Rosenthal Act claim is DENIED.

## IV. CLASS DEFINITIONS

Citibank moves to strike Juarez's class definitions on the basis that they create improper "fail-safe" classes. This motion is premature. *See Yastrab v. Apple Inc.*, 2015 WL 1307163, at * (N.D. Cal. Mar. 23, 2015) ("[I]n general, class allegations are not tested at the pleading stage."); *Cruz v. Sky Chefs, Inc.*, 2013 WL 1892337, at *5 (N.D. Cal. May 6, 2013) ("[C]lass allegations are better addressed through a class certification motion, after the parties have had an opportunity to conduct some discovery."): *Morris v. SolarCity Corp.*, No. 15-cv-05107-RS, 2016 WL 1359378, *3 (N.D. Cal. Apr. 6, 2016) ("While class allegations may be stricken at the pleading stage in the appropriate case, doing so is not warranted here. . . . [as defendant] has not presented any argument that would completely preclude class certification."). Citibank's motion to strike Juarez's class definitions is DENIED.

## CONCLUSION

For the reasons outline above, Citibank's motion to dismiss is DENIED. Juarez (1) adequately pleaded a "concrete injury" to establish Article III standing on his TCPA claim, (2) is a "debtor" under the Rosenthal Act, and (3) has pleaded sufficient facts to allege that Citibank's phone calls were intended to harass. Citibank's motion to strike Juarez's class definitions is DENIED as it is not ripe at this stage of the litigation. Citibank shall answer within fourteen days of the date below.

**IT IS SO ORDERED**.

Dated: September 1, 2016

WILLIAM H. ORRICK
United States District Judge